NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| _____ | : |  |
| CONSTANCE M. CARDOSO, | : |  |
|  | : |  |
| Plaintiff, | : | Civil No. 08-5451 (RBK) |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| COMMISSIONER OF SOCIAL SECURITY, Michael J. Astrue, | : |  |
|  | : |  |
| Defendant. | : |  |
| _____ | : |  |

**KUGLER**, United States District Judge:

This matter comes before the Court upon appeal by Plaintiff Constance M. Cardoso pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits. For the reasons set forth below, the Court affirm's the ALJ's decision.

**I.     BACKGROUND**

Plaintiff applied for Disability Insurance Benefits on February 4, 2005, alleging disability commencing on December 19, 2003. (R. at 59, 67.) Plaintiff was last insured for disability benefits on March 31, 2005. (R. at 59, 64.) Plaintiff's last employment was as a clerk at a liquor store in December 2003. (R. at 79.)

Plaintiff's claimed disabilities were osteopenia, degenerative disc disease, and a pinched nerve in the cervical spine. (R. at 67.) She also had a secondary diagnosis of an affective

1

disorder. (R. at 32.) Among other things, Plaintiff claimed that she had a hard time walking, standing, bending at the waist, and she claimed she could not lift or carry items per a doctor's orders and she had only a limited ability to drive. (R. at 68.) At the time of her application, Plaintiff stated that she was taking Crestor for high cholesterol, Actonel for osteoporosis, and Tylenol Arthritis for pain. (R. at 74.) In response to a Pain Questionnaire, she also listed taking Naproxsyn for pain. (Tr. at 92.) Dr. Mohammad Salem (primary care physician), Dr. Ivan Nadler (chiropractor), Dr. Chantel Imran (OBGYN), and Dr. Mitchell Bober (primary care physician) were listed as medical personnel who had provided treatment for Plaintiff's conditions. (R. at 70-71.)

The Social Security Administration denied Plaintiff's application (R. at 32, 33, 35-37, 39-41), and she filed a request for a hearing before an Administrative Law Judge on February 3, 2006. (R. at 42.) In the "Disability Report-Appeal," Plaintiff claimed she remained totally disabled and unable to do any occupation. (R. at 101.) Plaintiff again listed Dr. Bober and Dr. Imran as having provided treatment, and also added Dr. David Rapone (dentist). (R. at 102-03.) Plaintiff also updated her medications list to include Crestor, Cenestin (hormones), Ultracet for pain, Percodan for pain, Tramadol for pain, glucosamine for joint pain, a multi-vitamin for general health, aspirin for her heart, and calcium (supplement). (R. at 106.) On a different form updating Plaintiff's recent medical treatments, Plaintiff also noted that she took hydrocodone with ibuprofen for pain, Xanax for anxiety, and Axert for migraines. (R. at 119.) A hearing was held before ALJ Christopher Bullard on August 23, 2007. (R. at 325.)

Among the documents before ALJ Bullard were reports and records of Dr. Salem, Dr. Imran, Dr. Bober, Dr. Nadler, and Dr. Rapone. In addition, ALJ Bullard also received reports

and records from Dr. Louis Sharps, Dr. Elliot Bodofsky, Dr. Nithyashuba Khona, Dr. Hugh Moore, Dr. G. Peters, and Dr. J.R. Michel.  (R. at 128-133, 134-35, 142-45, 148-51, 152-65, 166-71.)  Also received were reports regarding a MRI of Plaintiff's brain and Plaintiff's spine and a CT of Plaintiff's head, (R. at 126, 127, 210, 214), as well as, reports from Salem County Women's Services regarding Plaintiff's treatments and contact with that facility, (R. at 267-304), and reports from Healthcare Commons regarding Plaintiff's psychiatric treatments from June 1999 through February 2004.  (R. at 305.)

Plaintiff's primary treating physician throughout her covered period of disability was Dr. Bober, who treated her from January 1996 through July 2006.  (R. at 195-231, 234-40.)  Among the records from Dr. Bober was a Physical Capacities Evaluation in which Dr. Bober determined Plaintiff's functional capacity.  (R. at 204-07.)  According to Dr. Bober, Plaintiff suffered from fibromyalgia, chronic cervical pain syndrome, and cervical spinal stenosis.  (R. at 206.)  Because of these ailments Dr. Bober stated Plaintiff was limited to sitting for only one hour per day; standing/walking for two hours per day; was limited to simple grasping with her left hand; could only use her left hand for repetitive motion tasks; could never carry more than 11 pounds and could only carry 0-10 pounds occasionally; and Plaintiff could only occasionally climb, stoop, kneel, crouch, or crawl.  (R. at 204-05.)  Dr. Bober also stated that Plaintiff's pain and/or the side effects of medication caused deficiencies in her ability to concentrate and complete tasks in a timely manner.  (R. at 206.)  Ultimately, Dr. Bober concluded that Plaintiff could not work full-time, even in a sedentary position.  (R. at 207.)

Plaintiff also visited Dr. Sharps several times during 2004.  (R. at 128-33.)  Dr. Sharps noted that Plaintiff had discogenic disease L4/5, discogenic disease L5/S1, and a bulging disc

L4/5 causing chronic lumbar pain. (R. at 133.) Dr. Sharps recommended epidural steroid injections and physical therapy. (R. at 130-31.).

Plaintiff also received treatment from Dr. Salem from December 2002 to at least 2005. (R. at 140.) In 2005, Dr. Salem ordered an MRI of Plaintiff's lumber spine, which revealed that Plaintiff had a "mild" disc bulging at L4-5, resulting in mild anterior encroachment on the thecal sac, and revealed a "tiny" disc herniation at L5-S1 not resulting in contact with the thecal sac or nerve roots. (R. at 127.) Dr. Salem's records further noted that Plaintiff's main complaints were recurrence of headaches, mostly migraines, and severe lower back pain radiating toward the lower extremities. (R. at 140.) Dr. Salem noted that Plaintiff had a x-ray of the cervical and thoracic spine in 2001 that showed "moderate to severe" discogenic disc disease and "mild" thoracic disc disease. (R. at 140.) Dr. Salem's ultimate assessment of Plaintiff was that she had "[m]oderate to severe cervical and lumbar disc disease," and that she had anxiety and depression. (R. at 141.)

From September of 2003 to March of 2004, Plaintiff was also seen by Dr. Imran. (R. at 136.) Dr. Imran diagnosed Plaintiff with vasomotor symptoms associated with estrogen deficiency and osteopenia. (R. at 136.) Dr. Imran noted that Plaintiff displayed mood changes, anxiety, and reactive depression. (R. at 137.) Dr. Imran concluded that Plaintiff had no limitations in her ability to lift and carry, stand and/or walk, push and/or pull, but also noted that she could not provide a medical opinion regarding Plaintiff's ability to do work-related activities. (R. at 138-39.)

Plaintiff also underwent a consultive orthopedic examination by Dr. Khona on March 17, 2005. (R. at 142.) Dr. Khona noted that Plaintiff's chief complaint was degenerative disc

disease in the neck and back. (R. at 142.) Dr. Khona's report noted that Plaintiff stated that she is able to cook 2 to 3 times per week, she does a little cleaning, does laundry 4 times per week, is able to shower almost everyday and bathe once in a while. (R. at 143.) Dr. Khona further noted that Plaintiff was in "mild discomfort," but had a normal gait, used no assistive device, was able to get on or off the changing table, and was able to rise from a chair without difficulty. (R. at 144.) Ultimately Dr. Khona diagnosed Plaintiff with "degenerative disk [sic] disease," osteopenia, and spinal stenosis by history. (R. at 145.) Dr. Khona further noted that Plaintiff was "mildly restricted because of her pain for functional activities and prolonged standing." (R. at 145.).

Plaintiff also underwent a psychiatric examination with Dr. Moore on April 21, 2005. (R. at 148.) Dr. Moore noted that Plaintiff reported no history of psychiatric hospitalizations and no outpatient mental health treatment. (R. at 148.) Dr. Moore noted that Plaintiff reported symptoms of depression and anxiety. (R. at 148.) Dr. Moore diagnosed Plaintiff with mood disorder with mixed features due to chronic pain. (R. at 151.) His ultimate conclusion, however, was that "[v]ocationally, the [Plaintiff] appears to be capable of understanding and following simple instructions and directions." (R. at 150.)

Plaintiff also had a psychiatric review from a state agency medical consultant, Dr. Peters, on May 4, 2005. (R. at 152.) Dr. Peters diagnosed Plaintiff with mood disorder with mixed features due to chronic pain. (R. at 155.) Dr. Peters concluded that Plaintiff's disorder had only a mild limitation on her daily living, mild limitation on her ability to maintain social functioning, and a mild limitation on her ability to maintain concentration, persistence, or pace. (R. at 162.)

Plaintiff also had a physical residual functional capacity assessment performed by Dr.

Michel on January 10, 2006. (R. at 166.) Dr. Michel noted that Plaintiff had a history of back, neck, hip, and knee pain, and that she also suffered migraines. (R. at 167.) Dr. Michel concluded that Plaintiff could occasionally life and/or carry 10 pounds; could frequently lift and/or carry less than 10 pounds; could stand and/or walk at least 2 hours per day; could sit about six hours per day; and had unlimited ability to push and/or pull. (R. at 167.) Dr. Michel further noted that Plaintiff could occasionally climb, stoop, kneel, crouch or crawl, but could never balance. (R. at 168.) Dr. Michel also noted that Plaintiff had no established manipulative, visual, communicative, or environmental limitations. (R. at 168.) Under a section of the assessment marked "Symptoms," Dr. Michel noted that Plaintiff stated that she had difficulty walking, standing, sitting, bending, or lifting, but noted further that she did perform light household chores such as cleaning, laundry, and washing dishes. (R. at 170.) Dr. Michel specifically stated "[Plaintiff's] level of functioning is credible but not to the degree alleged . . . ." (R. at 170.)

  Finally, Plaintiff also received treatment from Dr. Rapone for dental problems. (R. at 241.) Dr. Rapone noted that Plaintiff had TMJ pain for which he recommended a partial lower denture. (R. at 241.)

  Based on the above, and based on a hearing conducted on August 23, 2007 in which Plaintiff and a vocational expert Margaret Preno testified, ALJ Bullard issued an opinion on October 25, 2007 finding that Plaintiff was not disabled. (R. at 10-29.) The Appeals Counsel denied Plaintiff's request for a review on September 15, 2008, thereby making the Commissioner's decision final. (R. at 4-6.) Plaintiff filed an appeal in this Court on November 5, 2008.

## II.     STANDARD OF REVIEW

District court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("Neither the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984))).

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is

supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (quoting Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978))).  Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."  Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

### III.   DISCUSSION

For Disability Insurance Benefits, a claimant must meet the insured requirements of the Social Security Act.  An impairment, even an impairment which rises to a disabling level, cannot be the basis for a determination of disability when the impairment arose or reached disabling status after the date last insured.  See DeNafo v. Finch, 436 F.2d 737, 739 (3d Cir. 1971).  The determination of disability before the date last insured must be demonstrated through medical evidence.  Id.; see also Manzo v. Sullivan, 784 F. Supp. 1152, 1156-57 (D.N.J. 1991).

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity."  Such activity bars the receipt of benefits.  20 C.F.R. § 404.1520(a).  The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment.  20 C.F.R. § 404.1520(d).  If the condition is

equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to Step Four to evaluate the claimant's residual functional capacity (RFC) and analyze whether the RFC would enable the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

The ALJ first concluded that Plaintiff had not engaged in substantial gainful activity at any time since December 19, 2003. (R. at 14.) The ALJ next concluded that Plaintiff did not have severe impairments from osteopenia, TMJ dysfunction, or a mood disorder. (R. at 15.) The ALJ did, however, conclude that Plaintiff had a severe impairment from disc bulging and herniation, migraine headaches, and degenerative disc disease with stenosis. (R. at 15.) Next, the ALJ concluded that Plaintiff's conditions did not meet or equal any of the listed impairments. (R. at 17.) He then concluded that Plaintiff did not retain the residual functional capacity to return to her past relevant work as a liquor store clerk. (R. at 25-26.) Finally, the ALJ concluded, based on testimony from a vocational expert, that Plaintiff was capable of performing some sedentary work that was available in a significant number in the national economy. (R. at 27.) Based on these findings, the ALJ concluded that Plaintiff was not disabled. (R. at 27.)

Plaintiff argues that the ALJ erred in three ways in making his decision. First, Plaintiff argues that the ALJ failed to give controlling weight to the opinion of her treating physician, Dr. Bober. Pl. br. at 16. Second, Plaintiff argues that the ALJ improperly found that Plaintiff's psychological impairments were not severe at Step Two. Pl. br. at 18. Third, Plaintiff argues

that the ALJ's reliance on the vocational expert was improper because he failed to include Plaintiff's psychological impairment in the hypothetical question and failed to include that the individual be able to alternate sitting and standing at will. Pl. br. at 20-22. Further, Plaintiff argues the ALJ erred by failing to ask the expert whether her testimony was in accord with the Dictionary of Occupational Titles. Pl. br. at 20-23.

### A.     Opinion of Dr. Bober

Plaintiff argues that since Dr. Bober was her treating physician, Dr. Bober's opinion, which was supported by "extensive notes," should have received controlling weight. Pl. br. at 17. Plaintiff argues further that the ALJ's review of Dr. Bober's notes was improper under Brownawell v. Commissioner of Social Security, 554 F.3d 352 (3d Cir. 2008). Pl. br. at 16. The Defendant, on the other hand, argues that Dr. Bober's opinion was not entitled to controlling weight because his notes did not support the finding of a severe limitation and that his opinion was inconsistent with other objective medical evidence. Def. br. at 11-12. The Court finds that while the ALJ improperly reviewed Dr. Bober's notes in part, the error was harmless because his opinion was not supported by clinical or laboratory testing and it was inconsistent with other medical evidence, and thus not entitled to controlling weight.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). An ALJ may not make "'speculative inferences from medical reports,'" and may reject outright a treating physician's opinion "'only on the basis of contradictory medical

10

evidence,' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d at 429). Under Social Security Administration regulations, a treating physician's opinion is given controlling weight where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2); Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing § 404.1527(d)(2)). An ALJ's decision to reject or discount a treating physician's opinion must be explained in the record. See id.

In this case, ALJ Bullard did not give controlling weight to Dr. Bober's opinion. Indeed, the ALJ found that such deference was not appropriate based on his review of Dr. Bober's observations and progress notes because no objective clinical or laboratory findings existed to support the degree of limitation alleged in the Physical Capacities Evaluation. (R. at 22.) The ALJ specifically noted that "the record reveals no significant evidence of neurologic compromise which would affect [Plaintiff's] ability to stand, walk or sit to the degree as indicated," and the ALJ noted that Plaintiff's condition was only treated "conservatively" with medication. (R. at 22.) Furthermore, the ALJ found that Dr. Bober's opinion conflicted with other medical evidence in the record. (R. at 22.)

To the extent that ALJ Bullard's rejection of Dr. Bober's opinion was based on his own conclusions based on Dr. Bober's notes, that action was improper–though ultimately harmless. The ALJ does not state how he determined that Plaintiff's condition was treated "conservatively." This conclusion seems to be based upon his own review of Dr. Bober's notes and not based upon a medical expert's reasoned opinion. This conclusion is an impermissible determination based on lay opinion. See Morales, 225 F.3d at 317.

However, this error was ultimately harmless, and thus not grounds for remand.  First, the ALJ's decision was correct in that Dr. Bober's notes fail to show what, if any, clinical or laboratory testing he conducted to arrive at his conclusions.  The notes generally show a history of medical treatment, but do not show any testing vis-a-vis the conclusion of disability.  Even under Brownawell, as cited by Plaintiff, an ALJ is permitted to review the treating physician's notes to determine if the opinion is supported and thus entitled to deference.  See 554 F.3d at 355; see also Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148-49 (3d Cir. 2007) (affirming decision where ALJ did not defer to treating physician's opinion because of contradictory treatment notes).  Second, even if the notes did show some kind of testing, they are inconsistent with other objective medical evidence.  As noted by the ALJ, Dr. Khona's report shows that Plaintiff was able to perform activities of daily living, including cooking and cleaning, (R. at 143), which is seemingly inconsistent with an inability to perform sedentary work.  (R. at 207.)  Dr. Imran found that Plaintiff had no limitations whatsoever.  (R. at 138.)  Dr. Michel found that Plaintiff could sit and stand longer than Dr. Bober had suggested, and that Plaintiff had no manipulative limitations.  Compare (R. at 167-68) (six hours of sitting and two hours of standing, no limitations with manipulation), with (R. at 204) (only one hour of sitting and two hours of standing or walking, only simple grasping with left hand, no simple grasping with right).  Based on these conflicts with the medical evidence, the ALJ's decision to not give Dr. Bober's opinion controlling weight is supported by substantial evidence.  See LaCorte v. Bowen, 678 F. Supp. 80, 84 (D.N.J. 1988) (holding ALJ has discretion to resolve conflicting medical assessments).

Therefore, the ALJ did not err by not deferring to Dr. Bober and his decision to not give

deference is supported by substantial evidence. Thus, it is not grounds for reversal or remand.

>B.     Severity determination

Plaintiff also argues that the ALJ erred by finding that her psychological impairments were not "severe" at Step Two. Pl. br. at 18-19. Plaintiff argues that her impairments meet the "de minimus" test for severity because the records supplied show she suffers from a major depressive disorder and anxiety with periods of substance abuse, and because on a single occasion she had a GAF[1] score of 60. Pl. br. at 19. Defendant, on the other hand, argues that Plaintiff's psychological impairments were not severe, as found by the ALJ, because, among other things, reports supplied by a psychiatric consultant and a psychological consultant support that Plaintiff's impairment was not severe. The Court agrees with the Defendant and finds that the ALJ's determination that Plaintiff's psychological impairment was not severe is supported by substantial evidence.

The burden on the applicant for benefits at Step Two is "not an exacting one." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Thus, an applicant shows an impairment is severe merely by showing that it is something beyond "'a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" Id. (quoting SSR 85-28). This is described as a "de minimus" test, and it requires that any doubt be resolved in favor of the applicant. Id. The de minimus test can be satisfied with objective medical evidence and treatment history. See id. at 361.

In this case, neither the objective medical evidence nor the treatment history, which were

---

[1] A GAF (Global Assessment Functioning) score is a scale used and adopted by the American Psychiatric Association to quantify and qualify mental disorders. Nichols v. Verizon Commc'n, No. 01-0497, 2002 WL 31477114, at *2 n.8 (D.N.J. Aug. 16, 2002).

both examined by the ALJ, supports that Plaintiff's psychological impairments were severe. First, the ALJ considered objective medical evidence from Dr. Hugh Moore and Dr. G. Peters. (R. at 16, 148-51, 152-65).  While Dr. Moore found that Plaintiff suffered a mood disorder with mixed features due to chronic pain, (R. at 16, 151), he determined that "[v]ocationally, the [Plaintiff] appears to be capable of understanding and following simple instructions and directions."  (R. at 150.)  In other words, Dr. Moore found, and the ALJ agreed, that Plaintiff's impairment did "not appear to be significant enough to interfere with the [Plaintiff's] ability to function on a daily basis."  (R. at 16.)  Similarly, Dr. Peters specifically concluded that Plaintiff's psychological impairments caused only a mild restriction on activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace.  (R. at 162.)  In other words, Dr. Peters found Plaintiff's impairment was "not severe under the Social Security Act."  (R. at 16.)

     Second, the ALJ also properly considered Plaintiff's treatment history and found that it did not support that her impairments had more than a minimal effect on her ability to work.  The ALJ's opinion shows that he reviewed Plaintiff's treatment records from Salem County Women Center and Healthcare Commons.  (R. at 15.)  The ALJ reviewed these records and concluded they did not support finding a severe impairment because the treatment was for victimization rather than psychiatric treatment and because Plaintiff herself declined further services.  The Court's own review of these records likewise fails to review how they support that her psychological impairments had more than a minimal effect on her ability to work.  Plaintiff's evidence that on a single day she had a GAF score of 60, which means "moderate symptoms or any moderate difficulty in social, occupational, or school functioning," Pl. br. at 19 n.1, is alone

14

not enough to support that her impairment was severe. As pointed out by the Defendant and acknowledged by the Plaintiff, that GAF score only applied to single day. This single reading is not enough in light of opposing objective medical evidence from Dr. Moore and Dr. Peters to create doubt as to whether Plaintiff had a severe impairment.

Therefore, the Court finds that the ALJ's determination that Plaintiff's psychological impairments were not severe is supported by substantial evidence.

### C.     Hypothetical Question

Plaintiff argues that the ALJ's reliance on the vocational expert was improper because he failed to include Plaintiff's psychological impairment in the hypothetical question and failed to include that the individual be able to alternate sitting and standing at will. Pl. br. at 20-22. Further, Plaintiff argues the ALJ erred by failing to ask the expert whether her testimony was in accord with the Dictionary of Occupational Titles. Pl. br. at 20-23. Defendant argues that the psychological impairment and the ability to alternate sitting and standing did not need to be in the hypothetical question because they were limitations that the ALJ reasonably rejected. Def. br. at 12. As to the second argument, Defendant argues that failure to solicit whether the expert's testimony is consistent with the DOT does not necessitate remand because the error was harmless. Def. br. at 12. The Court agrees with the Defendant and finds that the vocational expert's testimony at Step Five is substantial evidence for the ALJ's finding of no disability.

At Step Five of the five step inquiry, an ALJ must rely on the testimony of a vocational expert or a learned treatise to meet the burden of establishing that jobs exist in the national economy that a claimant can perform. Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000). Testimony of a vocational expert typically includes one or more hypothetical questions posed by

the ALJ. Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). An ALJ may only consider a vocational expert's answer to a question for determining disability "if the question accurately portrays the claimant's individual physical and mental impairments." Id. A question that fails to consider an impairment that has a serious effect on the claimant cannot be substantial evidence in the ALJ's determination of disability. Id.

The Plaintiff first acknowledges that the ALJ did not include Plaintiff's psychological impairments in the hypothetical question because they were rejected at Step Two. Pl. br. at 21 Given the reasons discussed above, the ALJ's decision to not include the psychological impairment was reasonable because the impairment was not severe. Plaintiff further states that the question was improper because it did not include that the job must permit the claimant to alternate sitting or standing. Pl. br. at 22. However, the Court finds that this question was proper because the ALJ at Step Two, based on the objective medical evidence as discussed above, did not find that the Plaintiff needed to alternate sitting and standing. (R. at 19.) Thus, that limitation did not need re-introduced at Step Five.

Finally, the Court finds unpersuasive Plaintiff's objection that the ALJ's reliance on the vocational expert was improper because he failed to ask if the testimony was in accord with the Dictionary of Occupational Titles. Pl. br. at 22. Plaintiff does not point out how the expert's testimony conflicts with the DOT nor is the Court aware of any such conflict.[2] An ALJ's failure to ask regarding a potential conflict is not grounds for remand where the error is harmless. See Boone v. Barnhart, 353 F.3d 203, 209 (3d Cir. 2003) ("[W]e again do not hold that the failure of

---

[2] Notably, after the Defendant noted that no conflict exists and that Plaintiff failed to state how the expert's testimony was inconsistent with the DOT, Plaintiff did not respond to this argument in the reply brief.

an ALJ . . . to discover and explain a conflict *necessarily* requires reversal."); Jackson v. Barnhart, 120 Fed. Appx. 904, 906 (3d Cir. 2005) (citing Boone).

Therefore, the ALJ did not err in relying on the vocational expert's testimony and the Court finds that the ALJ's finding of not disabled is supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, ALJ Bullard's decision is supported by substantial evidence in the record. The Court affirms his decision that Plaintiff Constance M. Cardoso is not entitled to Disability Insurance Benefits.


Dated: 11-9-2009                                              /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge